Good morning, Your Honors. Richard Deliberti for Appellant Victoria Ryan. May it please the Court. I'd like to reserve five minutes for rebuttal. You may do so, Counsel, but just watch the clock. Thank you. This is a complicated appeal, unfortunately, and I wish I could say I could distill it down to just a few issues. Legally, I can't do that, but as a matter of equity, I do think it's a fairly simple case. I think it's – I think you can't look at the facts of this case and not think that something went really wrong here. I mean, so as background, I would say, you know, it's obviously not the copyright holders' burden to object to infringing uses of their works. And that seems to be a principle that's been lost throughout this case. In this case, Editions Limited, the appellee, secretly authorized canvas transfers, which are infringing uses of my client's works. They entered into licensing agreements secretly for different kinds of infringing works, unquestionably infringing works. Exactly what was the infringement? Well, let's see. There's – well, there's two – there are a variety of kinds of infringement that happened. First of all, these are all – they authorized infringing reproductions. And that authorization in itself is an infringement of the authorization right. There were – there was at least one canvas transfer produced. It's, I think, pretty undisputed that that is an infringing use. Peckers is the principal case on that. But a canvas transfer is considered to be a reproduction of the original painting. The images of these – images of the works were used to promote these infringing products. And even though supposedly none of them were actually sold, the use of those images to promote the sale was itself an infringing use. So, I mean, there were a variety of infringements at all phases. I'm not sure if that answers the question you were asking. Well, I mean, if it's a lawsuit for infringement, you've got to be able to tell us pretty clearly what the infringement was or were, or what they were. Right. Now, you know, as a sort of an atmospheric, what are the ultimate damages that you're trying to recover? Well, one of the frustrating things about this case from the beginning has been that this case has never really been about damages at its core. It's been about an injunction? It's been about an injunction, and it's been about finding out whether there were damages and the extent of the damages. Isn't it too late for the injunction? What good would an injunction do you today? Well, it would assure my client that the infringement wouldn't continue. By who? ELW? Yes. Are they still in business? Yes. As I believe, last I heard they were. The other company, I understand, is not in business. But the publisher is still in business. So that's important. But the injunction plays another role in this case. And from the beginning, it's always been an issue that was Victoria Ryan going to be the prevailing party in this case, and that was sort of an open issue that everybody understood, because it was recognized that there weren't necessarily a lot of them. What are you driving at? That activates attorney's fees? And so I think that there was a sense by the appellee and by the district court that if there was no injunction granted, that that meant that Victoria Ryan didn't get any relief, and therefore, it was justifiable to say that she wasn't the prevailing party. So the answer is, yes, the injunctive relief would be meaningful in the sense that it is in any case where there's infringement, and the defendant says they're not going to do it anymore, which happens frequently. And I think the case law is very clear, despite what the district court said, that even in those cases where the defendant says, I'm not going to do it again, I promise, that the plaintiff is still entitled to injunctive relief. But it's also an important issue because I think the district court felt that because she wasn't awarding any injunctive relief, that it was, therefore, reasonable to say that Victoria Ryan wasn't the prevailing party and hadn't obtained the relief that she wanted. Now, I don't think that's true. I think even without the award of injunctive relief, Ms. Ryan obtained the relief that she sought in this litigation, or at least largely obtained it. But I do believe that that's that issue was in part a proxy for something else. So this is the gateway to attorney's fees? Is that what you're talking about? Well, I think it was perceived by the Court and by defendants as a gateway to attorney's fees, and that's why I think it was fought. Because otherwise, I don't think there would be an issue that would be entitled to injunctive relief. Why would anybody care? Well, let's start with the summary judgment, particularly with respect to the claims of contributory and vicarious infringement. Tell us why that was erroneously granted. I'm not exactly sure why the summary judgment was granted. It strikes me as... Well, we can't get to the injunction issue unless we deal with the merits, right? Right. Additions Limited provided authorization for the production of canvas transfers. Additions Limited entered into licensing agreements that said that these companies were authorized to produce giclés and authorized to produce wallpaper murals. Those, by doing that, they induced infringing activities, not just the production of canvas transfers, but also the marketing of canvas transfers and giclés and wallpaper murals, and the use of my client's images to promote those infringing uses, which is illegitimate. It's not a fair use to, obviously, it's not a fair use to use someone's image to promote an illegal sale. So that in itself is an infringement. So they did induce, so for contributory infringement, they did induce the infringement and contribute to the infringement by entering these agreements, providing these authorizations, and selling the posters and digital images that were necessary to produce these things. If these companies that were producing these infringing products didn't have the poster, it didn't have the digital image, there'd be no way for them to produce the infringing product. And one of the original things that we said in the complaint was that they should be careful that if they know someone is planning on making something infringing, that they're not supplying the poster and they're not supplying the digital image. There's no reason for them to supply it. This is a legal issue. What's your best case on secondary liability? I assume you're trying to get at ELW, not Art Select. Well, that was the real wrongdoer in this case. Right. I do think that. But we have a legal issue. The best case is that they sat down with these guys and they said, it's okay for you to produce infringing works of this artist's work. It's okay for you to make copies of my client's artwork. Okay. It's okay for you to make wallpaper murals. It's okay for you to make giclés out of my client's stuff. It's okay. And we'll sell you the poster. And they're vicariously liable because they clearly had a financial incentive for entering into these relationships, even if that financial relationship was only that it made the producers happy with editions limited and said, we're going to do more business with you. I'm sorry. Does it make any difference if we take the contributory approach or the vicarious approach? I'm not sure that it does, Your Honor. You'll win on one or the other, but it doesn't make any difference. I don't believe it makes a difference. I believe that there is both contributory and vicarious infringement in this case. But you can't win twice. Okay. I had asked you.  I don't think I got an answer to my question. What's your best case on contributory or secondary? You mean one or the other? On any. You mean legal case? Are you relying on 10-106? Or are you relying on a case? Oh, you mean what's my best authority? Yes. I see. I'm interested. I mean, I guess I did – I thought that we were – I thought that on general – I'm not sure I need to – I'm not sure I need to reply on any one case. You're not in trial court. You're here on an appeal where the trial court ruled against you. I understand. And it would help me a great deal if you could give me some authority to establish what the error was that you think the trial court made. Well, there's no – I mean, I don't have to look at any one case to know that the standard for contributory infringement – that the standard of contributory infringement – the case I cite here is A&M Records. But there are any number of cases that say the exact same thing. The contributory infringement is when – You think the conduct by ELW here comes within A&W? It comes within the standard described in A&W, yes. Very good. But there are other cases that do not come within the standard.   And the reason for that is, I think, in the case of the defendant, which is that a defendant knowingly induces, causes, or materially contributes to another's infringing conduct. It seems to me that the essence of one of your arguments is, though, that the district court messed up summary judgment by relying on disputed facts. I think the district court did rely on disputed facts. I think even more so the defendant relies on disputed facts in their appellee's brief. The principle disputed fact that the district court seems to be relying on – and, again, I'm not always certain how it is that the – why it is the district court thought these facts were important, but they do discuss them. But she does discuss them in the cases, and that is that she says, oh, well, Victoria Ryan never told Editions Limited that she objected to this until, I believe, it was – In 2009, 2005. Exactly. And that's just – and that's completely disputed and completely untrue. I mean, all the way back to the beginning of this relationship, Editions Limited had asked Victoria Ryan, I believe in 2000, if she would participate in their own GCLEI program, and she said no. She said, I don't like it. And they – and in 2004, there were several occasions when she states that she went to Editions Limited and said, oh, my God, I'm seeing all of these Canvas transfers being sold. The Internet was full of them, and it was getting worse and worse every day, and I don't like it. And the district court said, basically, well, you know, I – she – I'm not sure that I like your evidence because, well, in this e-mail that you're talking about, you were a little bit too gentle in the way that you put it, basically. She said, oh, well, you know, I'm concerned about this, and what do you think about it? Well, that was in the context of other conversations that were made, but the district court seems to make a big deal out of the fact that they don't think she was direct enough. If you have any other questions, I'm glad to answer them, but I should maybe save a few minutes. Very well. We'll hear from Editions Limited. Mr. Painter. Members of the Court, Michael Painter appearing on behalf of the appellees. Now, the only thing that counsel stated that I do agree with is that this was a simple case. The first thing that was done by the appellee to try to make this clear was the initial motion for summary adjudication. The damages, if they were proven, was limited to $1.72. $1.72. Now, as to the statements made by Ms. Ryan, the district court found that there was no evidence to create a controversy as to a material fact regarding the canvas transfer that was sold. The initial statement was an inquiry regarding the opinion of Editions Limited employee as to what he thought of canvas transfers.  transfers. What is the state of evidence with respect to ELW's knowledge and what it told Art Select? The knowledge is that it mistakenly, it mistakenly, along with a group of artists, said that these works are available for canvas transfers. Okay. Now, at this point, Editions Limited has no knowledge regarding the subject until June 9th of 2005 when Ms. Ryan calls and says, I don't want this made into a canvas transfer. But isn't that disputed? Sorry, go ahead. What was the basis for that statement that they made? If you can go ahead. Totally a mistake, Your Honor. I mean, it they did not have written authorization from Ms. Ryan, but a canvas transfer is a presentation. It's another way to present a poster. And what is in the record, the same day that Ms. Ryan is telling Editions Limited not to make it, she is sending e-mail to someone the same day and saying she has no problem with this. But that's not the point. She told Editions Limited and they immediately called Art Select, said do not manufacture or sell. I'm slightly confused. If it was a mistake, there's no, nothing can be done about that mistake unless and until she registers an objection to what was going on? Well, the question is what happened before she registered the objection? At this point, the piece that resulted in the $1.72 profit hadn't been sold. They were told not to sell it. They were told that they were not to manufacture, they were not to sell canvas transfers. And two weeks later, for whatever reason, they sold this one piece. And that was where the $1.72 came in. They had been told not to do it. Well, they made a mistake and it happened. And it happened. And it amounts to an infringement. Exactly. And that's why there was a ---- Isn't that the end of your case? When you say the end of our case? A vicarious contributory? I mean, you kicked the whole thing off by making a mistake and then it happened. The direct cause, the Paul's graph cause was it happened. The case that I would point to regarding contributory infringement is the Ninth Circuit's decision in Perfect Ten v. Visa. It says the defendant must have knowledge that the offending ---- the infringing works were available and could have taken measures to prevent direct infringement but failed to do so. And before this piece was sold ---- You told us, though, that they made the mistake. That's a convenient ---- Of just saying it was available. They didn't know that it was available. It wasn't. They had no knowledge that it was being made. So doesn't that differentiate this case from the one that you're relying on? I mean, it was your client who started this whole thing by making a mistake. That's one way of putting it. The other way of putting it is putting into effect a chain of events that led to an infringement, vicariously and contributorily. If they ---- if Additions Limited had not specifically instructed Art Select not to sell that piece, I would totally agree. Too late. They made the mistake. And that's the cause of eventually the sale. Well, Your Honor, I would respectfully disagree. They're told not to sell it, and they sell it anyway. That wasn't a mistake. Now, I ---- there's nothing in the record that indicates why they sold the piece after being told not to. There's nothing in the record as to that. And I would say that ---- So you can absolve ---- your client can absolve itself of all responsibility by accepting what you say, is intervening and saying, don't do it. Well, you ---- There was no question there was a mistake. But I would submit that there is a line of decisions that before you even reach the question of infringement, you determine whether it's de minimis. And these cases all indicate is that is the alleged infringement strong enough that it goes beyond that de minimis? And if not, the finding is going to be there's no infringement. In this case, it's secondary. Contributory infringement requires ---- is that if they had not warned our select, I would agree. Do you have a case on that de minimis infringement? No. The issue never came up. Are you making it up? What are you relying on when you say de minimis makes no difference? Your Honor, I'm only saying that there are a line of cases that talk on the issue. What are they? I do not have them available. Well, that's not very impressive. I mean, you don't have ---- you make an argument, we ask you what the argument is based on, you don't know? Your Honor raised the point of ---- You raised the point of de minimis. You're correct. You're correct. And you can't back it up with any cases? That's correct. You know, I find that counterintuitive. It seems to me that you could have an infringement, but the damages could be very small, de minimis. Nevertheless, in terms of prevailing party, it seems to me that you could have a judgment, but the award is only $1.72, in which case there is a prevailing party attorney's fees eligibility. Well, there are no attorney's fees that can be awarded under the Copyright Act because of the late registration. The contract doesn't ---- the only obligations under the contract is that Editions Limited would manufacture and sell posters and that ---- and pay royalties. And they did exactly that. The question of authorization is under the copyright, not under the contract. The attorney's fees provision is ---- deals with the breach of contract, claim of the contract. Now, the unfair competition was found to have been preempted by the Copyright Act. The slander of title was dismissed. Well, the relevant provisions of Ryan's contract with ELW states, In the event that litigation is instituted with regard to this agreement, the prevailing party shall be entitled to its costs in the suit, including reasonable attorney's fees. I mean, isn't that the essence of it? I agree. And that's for the breach of contract claim. The copyright infringement claim, there is nothing in the agreement that relates to litigation for copyright infringement. It just says litigation is instituted with regard to this agreement. I agree. This is litigation regarding this agreement. There was litigation regarding the agreement, and there was found to be no breach of the agreement. Well, you're on appeal here. Your construction of this is pretty cramped. It seems to me that it's easily accessible to a construction that's broader than just this contractual fight. Litigation is instituted with regard to this agreement. This seems to me to be litigation instituted with regard to this agreement, albeit one that sounds in copyright. I would respectfully disagree. The act of copyright infringement, the contributory infringement, is collateral to the agreement. That's your argument. Yes, that is my argument, Your Honor. And by late registration, they had no right to seek attorney's fees for any act of copyright infringement. That's correct. Now, Your Honor, all I would say is that the crucial point occurred on June 9th, 2005, when Art Select was told not to sell that piece. If they hadn't sold the piece, there would be no damages. So the fact that they had inadvertently listed Ms. Ryan, along with artists, other artists, in the statement that the pieces were available for Candace Janters, that sale would not have occurred. That sale did not occur if they hadn't said a thing and it did. I would not raise this argument. Again, that one point in the Perfect Ten versus Visa decision regarding having an opportunity to stop it and not using it, if that can be disregarded, then that takes – that changes what the law is for contributory infringement. I mean, if you're going to do that, you're going to have to do it. But they didn't know it was being done. I mean, inducement requires that they have knowledge and they use it. In the street vernacular, so what? I mean, your client authorized this to happen, and it happened. You say, well, it was a mistake, and they told them don't do it, but you authorized it, and it happened. With the caveat that they were told not to do it before the sale took place, I agree with your point. A little too late. It happened. The sale did not take place until after the warning. I don't think that makes any difference on vicarious liability. Well, vicarious liability, again, vicarious infringement required that ELW financially was rewarded for this, and they don't make campus transfers. They don't make any money from them. They make money only from selling posters, which a royalty was paid on. So the contributory infringement comes down to this question of whether the warning that was made, which was relied on by the district court judge, whether that has any meaning or not as the law cited in Perfect Ten v. Visa. Well, I think the answer to that is no. Once you made the mistake, you bear the burden of mistakes and things happening, and it happened. Well, your question. If you had made the mistake in the first place, this would have never happened. If you made the mistake and it happened, the infringement happened as a result of your authorization, your client's authorization. Well, then I have to indicate that if that's true, if there can be contributory infringement after warning the party not to go ahead. Do you have any cases, Ninth Circuit or otherwise, that say once there's a warning, it's over, no matter what happens on the other side of the warning? It can't be visited upon the person who started the change. I think Perfect Ten versus Visa International states exactly that. Perfect Ten states exactly that? I'm sorry? Perfect Ten versus Visa International, 494 Fed 3rd, 788. It's a Ninth Circuit 2007. Read me the language. Pardon? Read me the language, please, where it says that. Again, I – this is probably paraphrased, but it's a case of a paraphrase. Paraphrase means you're going to misstate it. That's the way I hear it. When anybody says paraphrase, that means I'm going to spin it in my favor and not really tell, say what it says. I don't have a copy of the decision. You don't, right? No, I don't. But that's the last case you want us to read before we decide the case. It's Perfect Ten. I think it's – on the issue of contributory infringement, I think it's the essential – I think it's the essential case. Where's that in your brief? Page 48, Your Honor. Did you quote it there? You quote it on page 48. I'm sorry? You quote it on page 48. You quote the case. Yes, I do, Your Honor. All right. Good question. To be liable for contributory copyright infringement, a party must engage in personal conduct that encourages or assists the infringer. And then the following on there is, again, they're – they were – they were decided on the same time, was Perfect Ten v. Amazon. And between those two cases, the qualification was inserted that what was important is if the alleged contributory infringement had the opportunity to stop it and didn't do it. And, yes, that's what we are relying on on this issue. It seems our case is somewhat different because it happened anyway. But we'll read the cases. Thank you, counsel. Your time has expired. Mr. Deliberty, you have some reserve time. Thank you, Your Honors. On that point, on the contributory, do you have a response? Do you agree visa controls, that that case, Perfect Ten v. Visa Controls? Well, it's just not true that they didn't have an opportunity in this case to stop the infringement because, of course – of course, they didn't have – first of all, they didn't have to authorize the canvas transfer to be produced in the first place. And had they not authorized it, the infringement wouldn't have occurred. Secondly, they didn't have to sell the poster that was necessary to create the canvas transfer. And had they not sold the poster, the infringement wouldn't have occurred. Further, even – This is all in reliance on the contract. Is that correct? Or are you relying on copyright law when you say that? Well, under – I – maybe I misunderstood the question. Under the standard of Perfect Ten for contributory infringement, Additions Limited is saying, well, there wasn't anything we could have done to stop Art Select from producing this canvas transfer. And I'm saying under that standard, that's not true because they didn't have to – and they didn't have to sell the poster. And I also agree, first of all, that the mere fact that they said, hey, we made a mistake before when we said this was okay and you produced this thing already, but don't sell it – I agree that that's not enough. However, it's also just not true because the message that Additions Limited sent to Art Select was not that we made a mistake, we should never have done this in the first place. The message they sent is that – Are you going to quote language now or paraphrase? I'm going to – well, I'm going to quote language from the language that Additions Limited used when they spoke to Art Select, was that Ryan is no longer approved for canvas transfers. That's not the same as saying we made a mistake and you never should have produced this thing in the first place. And if I'm Art Select, the mere fact that some artist has said, I don't want you to make any more of these, doesn't mean that you should stop selling the ones you've already made. And you're focusing on the language no longer approved. Exactly. That suggests that they didn't make a mistake. I never was, or this is a mistake. Precisely, Your Honor. Precisely, Your Honor. I also want to quickly hit two issues. One is there is this issue of unfair competition. I believe that was wrongly decided, and it's important because we had no opportunity to present any evidence of damages on that. And also, I do think that the idea that it was okay to produce boilerplate discovery responses and that they didn't have to file an amended response or explain what the responses meant, that that was significant error. If you prevail, you go back to the district court, what are you going to ask for? I want to know everything you're going to ask. Well, the first thing is that I'd like to get the discovery that I asked, that I wanted to get in the first place. And that will enable you to do what? To find what? Well, that will enable, I mean, I'll tell you. To scope out the possibilities of greater than $1.72 damages? That's one thing. And to figure out whether there were other paths of infringement that I don't even know about. I can tell you, after all these denials, after when since this case has been on appeal, there have been two other artists that have filed suit against these guys for other things like this. Okay. Well, that's off the record. Anyway, the first thing you want is discovery. Second thing you want is discovery. I want discovery. I want to get my injunctive really contributory infringement. I want to be able to put on evidence of other kinds of damages, including my damages for slander of title. I want to be able to put on a claim for punitive damages, because I think the behavior that we've seen here is egregious and that a jury is going to agree with that. And I want a determination that we're the prevailing party and we're entitled to our attorney's fees. Under the contract? Under the contract. That's with regard to this agreement? With regard to this agreement. It's litigation. And incidentally, I apologize, but one more thing I want to say is there was a breach of the contract. The breach of the contract, we alleged, was that they weren't providing the information they were required to provide under the contract. They weren't providing the information they were required to provide under the contract. And when we filed the lawsuit, after we filed the lawsuit, they sent a letter to me saying, hey, here's that information you say we were supposed to provide under the contract. So there was a breach of contract and we got what we wanted. We were the prevailing party on that claim, too, even though I think that the right standard is the prevailing party in litigation. If it was just the contract, one of two breaches that we alleged, they remedied it right after the lawsuit was filed. Have you tried to settle this case? Yes. With what result? Obviously not. The result is that we're still here, Your Honor. Did you use our mediation services at all? We did not actually go through mediation, but there were discussions with the mediation service. Counsel Judge Newton has a question. Why doesn't the unfair competition claim just collapse into the other claims? What's going to be different? Because there are additional elements to the unfair competition claim that aren't elements of contributory infringement or vicarious infringement. What would you get extra if you won that? Do you understand the question? I do understand the question, and my creativity is failing me at this moment. I just think that – I mean, I do think that there could be additional avenues of damages. I do think that there are additional avenues of injunctive relief. If there was an unfair competition claim, I could get injunctive relief that basically said don't do this to this artist or another artist again, which I think, had this happened several years ago, would have saved a lot of other artists a lot of grief. It would allow me to get an – it would allow me to get an injunction that said you are not allowed to run around entering license agreements, providing authorizations on behalf of artists, just because you think that if you asked, they would probably say it was okay, that you need to actually go get the authorization in advance. And that is what the unfair competition claim would allow me to get. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Noonan, O'scannlain, Trott